Good morning, Your Honors. May it please the Court. Mary Ann Dugan for the appellants in this case, Butler v. Douglas County. I would like to reserve five minutes for rebuttal. Thank you. There are two very separate types of issues on appeal, as you know. There are discovery issues, discovery motions that were denied. Our motion was denied. The Federal Government's motion to quash was granted. And then there is the dismissal of the case on summary judgment. Unless the Court has a preference, I will start with the discovery issues. I do. I'm sorry. Okay. If the district court was right about the qualified immunity, we discovered you might as well admit it. That's correct, Your Honor. That's true. Why don't we discuss the qualified immunity first? Very well. Yes. No problem. So the Court made several specific rulings in its written opinion, all of which are in error. The Court held that the plaintiff's evidence was speculative. But as we've briefed significantly, that is the nature of these types of cases, that it's not speculative, but it is circumstantial evidence. We have significant evidence regarding timing of the transfer of the case to the Federal Government. We've got evidence of animosity of the sheriff towards the Oregon Medical Marijuana Act. Can I just stop you there just for one second? Yes. I'm familiar with a recent case that the Supreme Court decided called Ashcroft v. Al Kidd, and they made it very clear that when you talk about qualified immunity, that the case that supposedly in this case gives the sheriff knowledge has got to be pretty close on point. It can't be a generality, some general understanding. Do you have any case law that indicates that the U.S. Attorney's Office knew the – I'm sorry, let me back up. As far as I know, there's no case law that establishes that notifying the U.S. Attorney's Office to retaliate against somebody for failure to reclaim property is a constitutional violation. I guess that's the best way to put it. Do you agree with that? Well, Your Honor, I don't agree with that. What's the case? Well, I don't agree that that is the correct standard. I do agree, of course, that there is not a case directly on point, and I do not agree that that is the standard despite the recent case. How do you deal with Al Kidd? Well, Al Kidd did not change the prior preexisting case law, which has for decades made clear that you do not need to find a case on all fours. That's what I thought too when I wrote Al Kidd. But the Supreme Court said otherwise. The Supreme Court said it's got to be on all fours. They took away that generality that I also relied upon, and they said you can't do that anymore. You've got to be right on point. And that's what I'm looking for. Is there a case on point on all fours? There is not. And, Your Honor, that issue was not briefed below, nor on appeal. I would ask permission to file a supplemental two-page brief on that case. Fine with me if it's all right with the presiding judge. Thank you, Your Honor, because it is an important issue. Pardon? Two pages. A 28J type of supplemental memo. There are, of course, cases. I will follow the 28J guidelines, which are word limits, I believe, or page limits, whichever is less. Okay. There are, of course, cases which are similar to what happened in this case, such as the Carpinteria case, which established that there is a cause of action for retaliation based on one's First Amendment activity when the government takes action, even if that action is action it was allowed to take under the law, if you can establish to a fact finder's satisfaction that that was retaliatory intent, then you win that case. And if you bring forward sufficient evidence, circumstantial evidence of retaliatory intent, you should survive summary judgment. And so here we don't have just timing. We have animus on the part of the sheriff. On the day he intervened in our motion, he stated to a newspaper that he did not believe that there is any medical value of marijuana. The government just issued an FDA ruling that says the same thing. I know it's not part of our case, but is that an unreasonable opinion under the circumstances? The point is not whether it's reasonable or unreasonable. The point is that the sheriff has repeatedly demonstrated animus toward the law itself, which is still on the books. He, of course, and others ---- You're going to deny him his First Amendment rights to speak? Of course not. I thought that's the very thing about which you were complaining here. Of course not. It's merely evidence that this Court has said supports the finding of ---- supports, sorry, provides circumstantial evidence of retaliation. It's, for example, in the workplace. It is perfectly fine for somebody to state their opinions. But if that opinion is, for example, I don't like black people, and then that person fires a black person, that evidence is allowed to be used in the case in the lawsuit. That doesn't deny that person their First Amendment rights. Besides the timing and the animus, this procedure that occurred was simply an anomaly. The DEA agents swore out an information without going to the prosecutor, without going to the grand jury, which was actually ongoing, and managed to do this in a very expedited manner so that we did not get our hearing on the motion to return the medical marijuana. And so it also falls in that ---- those category of cases which this Court has said you can use as circumstantial evidence the fact that the defendant has gone outside of normal policy or procedure. Excuse me. And this is simply an abnormal situation for the Federal Government to be prosecuting a crime of this type. And there was no evidence submitted before below that rebutted our statement to that effect. The Emerald Steel case was cited by the Court below as a decision which the Court said has ---- sorry, Emerald Steel is an Oregon Supreme Court case which the lower court in this case said makes clear that the Oregon Medical Marijuana Act is preempted by the Federal law, by the Controlled Substances Act. But in Emerald Steel and in the recent Willis case, the Supreme Court made clear that Emerald Steel did not ---- is not a blanket statement that the Oregon Medical Marijuana Act is preempted. That Emerald Steel case was an Americans with Disabilities Act case in which the Court said that there is no duty of an employer to accommodate medical marijuana in the workplace. This is a very different situation where the law, the Oregon Medical Marijuana Act, requires the prosecutor to immediately return marijuana to patients when there is no decision to prosecute on that ---- prosecute the patients and prosecute on that marijuana, that specific marijuana. The district court ---- one of the ways in which the district court erred was we cited all of this case law on circumstantial evidence, and the Court said, well, that's all from the employment context. There's no support for such a narrowing of this Court's case law on what it takes to survive summary judgment on a retaliation claim. The Court also said that it would ---- the exact words were, it could be argued that the defendants would be violating the Controlled Substances Act if they returned the patient's medical marijuana. But as the Court ---- the Oregon Court in Kama, K-A-M-A, and this Court in a footnote in Rosenthal said, that there's an exception in the Controlled Substances Act where the act of delivering the controlled substance is something that's required by law. Here, that is required by the Oregon Medical Marijuana Act. And finally, the Court held that there would be a public policy interest in not allowing this case to go forward. And, Your Honors, I would submit that if the sheriffs do not like the Oregon Medical Marijuana Act, they certainly are free to lobby for its change, and the legislature is free to amend or revoke the Oregon Medical Marijuana Act, but they have not done so. Thank you. Thank you. May it please the Court. Stan LaGore for defendants Douglas County and Sheriff Brown. Can you speak up a little? Pardon? The microphone is for recording, and it doesn't ---- You aren't hearing me. ---- voice very much. Okay. So you need me to talk louder. Yes. He does. Got it. Sorry. He does. Yeah. Stan LaGore for defendants Douglas County and Sheriff Brown. Douglas County and Sheriff Brown. I don't really have anything to add that isn't in the district court's opinion. We feel that the three reasons are all, for granting summary judgment, are all independently valid and supported by the record. I'd like to, Mr. LaGore, if you will, to help me on something. If there were a qualified immunity issue here, I think they'd probably make a pretty good case that this law is not preempted by federal law. And so let's arguendo. Let's say that's true. And the point is pretty well made that there's a lot of smoke here. There may very well be fire, and therefore there may be material evidence that needs to come out to make a determination whether there is, in fact, a basis for going forward on summary judgment. So much of this, in my case, gets down to the qualified immunity issue. If there's qualified immunity, then the plane flews. If there's not qualified immunity, then we have to see. You heard me talk about the Al-Kid distinction. The counsel, of course, is quite correct. That's a fairly recent case. It wasn't briefed before. We welcome your input on that as well. But if Al-Kid is correct, of course, we're bound by what the Supreme Court says at any time, whether or not it's briefed. And I would appreciate your perspective on the qualified immunity. They take the position that, you know, openly retaliating on something of this nature is something that's well known, should be no problem. The sheriff was on notice. Why is that wrong? Well, again, it comes back to defining what the question is. What is the law that is supposed to be clear to a reasonable officer? And even before your Ashcroft, Al-Kid, the Supreme Court has talked about and noted and emphasized, and it's become boilerplate in qualified immunity, that you've got to look at the particular circumstances of the case. It's got to be a particularized analysis there. So I don't know that it's that much of a stretch to ---- I mean, let's be candid here. This is cute, I mean, on the part of the sheriff. The sheriff knew perfectly well what he was doing. He didn't like this. This was a way to kind of get around it. The only question from my mind is, was the law clear that he couldn't do it? I mean, he wasn't just doing this for fun. This was his way of dealing with it. Isn't that a fairly accurate statement? No, no, we disagree completely. We will assume, only for the purposes of qualified immunity, that the sheriff contacted the U.S. Attorney's Office. But, in fact, we deny that. But, okay, so let's assume that he was having communications with the AUSA. Is there any doubt about that? I believe there is. Okay. You're saying there's nothing in the record. Oh, no. Any ongoing contact between the AUSA and the sheriff? I thought that was not true. I thought that was an ongoing basis. They had regular contacts. Indeed, we're working together in the initial bust on the thing. But they were a team, weren't they? Well, the DEA had representatives with the DENT. That's their drug enforcement agency. And DEA, at that same time, was conducting an independent investigation of this same marijuana grow. And there's evidence of that in the record in a couple of places. We have the affidavit of the officer who swore out the ‑‑ for the arrest warrants. Well, don't you have any disputed factual issues in this scenario? No. What we're talking about here, I think, is after the search warrants were executed. What we're talking about in this case is was there ongoing communication about, hey, these guys, they filed this petition to get their marijuana back, and I don't want to do this. Will you take this? Will you prosecute this federally? That's removed in time. You don't think they talk that way? This is months later. No, I don't. Really? They've got ongoing things to do. No, I really don't. And there is undisputed, unless you are accepting this circumstantial evidence, but both ‑‑ Doesn't that get down to the issue that they want some discovery to be able to nail down what's ‑‑ there's smoke, they want to see if there's fire. I mean, the reality is, you know, it isn't just the AUSA. It's the federal government in its prosecutorial role in connection with drugs. And you have a sheriff who feels strongly, and we respect his right to feel however he feels on that, who feels very strongly that this is a bad thing, having the marijuana out there. And it's very clear there was an ongoing cooperation. Indeed, the government makes a great deal about this point, about the cooperation. If you want us to base our decision on basically the negative pregnant of what you're saying, I suppose we can do that. But the reality is, to me, the whole thing comes down to the qualified immunity. I would really like your very best case as to why there's qualified immunity here, because to me that's where the whole thing hangs, at least as far as the summary judgment aspect is concerned. Okay. Then the very best case for qualified immunity is... Why that and why there are no factual issues and disputes as far as qualified immunity is concerned. The issue for qualified immunity is, could an officer have reasonably misapprehended the law at the time? Now, the law at the time was Gonzales v. Rake. But the reason why, and I think the real evidence here is Emerald Steele. If the Oregon Supreme Court can be struggling... Now, forget if you think Emerald Steele is right or wrong or anything like that. If the Oregon Supreme Court can be struggling about whether or not there are preemption issues with the provisions of the Oregon Medical Marijuana Act that allow, that permit, possession, delivery, manufacture, where the Controlled Substances Act clearly prohibits those things, then, and that's 2010, I believe it's 2010, where they decided that one, then here's the sheriff in 2008 working off of Rake and saying... Off of what? Oh, what is it, Gonzales v. Rake? And what exactly... I mean, we all know about that in terms of the Commerce Clause and so on. Yeah, that's on the Commerce Clause primarily. What does that have to do with the ability of a sheriff, or let's say more importantly in this case, preemption law? What does that have to do with preemption? I didn't know there was a preemption element of that. Well, there isn't a preemption element to that. But... So what are the elements of Rake? Well, because they are looking at the medical marijuana issue in California and the enforcement, and whether or not... But with respect, counsel, I thought the whole question of Rake was, this is intrastate growing of marijuana for individuals, does the Commerce Clause touch that? Obviously, a rather current theme for a number of lawsuits in the United States. That was the gravamen of Gonzales, wasn't it? Well, it was. It was. I get your point about Emerald Steele, probably a really good point. If the Oregon Supreme Court is wrestling with this, how can you expect the sheriff to know any different? Right, right. But I don't understand the Gonzales v. Emerald Steele... Well, let me back off of Gonzales then. You have to ignore that one. Yes, yes. So that is my strong argument there, is the Supreme Court of the state of Oregon is wrestling with this exact same thing several years later. What's the sheriff going to do years before? And your point there, I gather, is that the lawyers and the judges don't even know whether this law is... whether it's preempted by federal law, right? Yes. So they don't know whether it's effective. Yes. Okay. That's it. If there's an argument whether or not it's decided right or wrong, they actually decided that there was a preemption issue. There's no reason you should be aware of it, but in May of this year, another panel of this Court took up the question of preemption in another case, in a California case where, I could say, Marla James v. The City of Costa Mesa. That panel is still working on that question. So would it be appropriate for this panel to wait until the other shoe is dropped on that case? Well, I would say no. I don't know whatever the Court feels is appropriate. The State laws may be different in some respects as to California medical marijuana and Oregon medical marijuana, but they both involve the question of federal preemption, whether federal officers are bound by State law in dealing with so-called controlled substances. Well, and this case is whether a State officer is bound by Federal law. My impression is that the comma case that was recently decided by the Court of Appeals here pretty well concluded that at least a portion of the State medical marijuana law that you're dealing with here is not preempted by Federal law. Do I misread that case? I don't know that that was ever really a question to the Court. I agree. It's a recent case, but I just wondered if it was. As I understand it, at least insofar as the Court of Appeals of Oregon is concerned, that the issue of preemption insofar as what we're talking about here, return of medical marijuana and so on, has been determined not to have been preempted by Federal law. Well, at that point, yes. And at this point. If that's true, then probably a California case dealing with California law may or may not have any real relevance to this case, would it? I'm sorry. I do not know the facts of that. I don't know what the issue is exactly. Okay. And the thing in comma was, did the officer have to return the marijuana? And the State court, finding that the Oregon Medical Marijuana Act was lawful and enforceable, then that would fit under the exemption in Federal law that they were carrying out a lawful or enforceable State law. They were enforcing State law. And that's my understanding of comma, that that's what the Court of Appeals decided. Is that correct? Yes. Okay. And what we're saying is that actually that State law is not lawful, that that is preempted by Federal law and thus really is without effect, that particular provision. Well, the real issue here, though, I believe, and correct me if I am mistaken, is at the time that Sheriff Brown took this alleged action of coordinating with the Federal government to deliver marijuana to them when it was required under the State law to deliver it to the plaintiffs, whether the law was such that he should have known, the reasonable sheriff, if you will, should have known that to do so would have been a violation of the constitutional rights of the plaintiffs. Is that a fair statement? Whether or not to confer with and even to urge Federal prosecution of this, yeah, that would be a fair statement of what the law is that he would have to understand was clear, clearly established. And since Emerald, of course, didn't specifically deal with that, had dealt more with the issue of preemption generally, your point is that at least at the point that this occurred, the issue was sufficiently clouded that no reasonable law enforcement officer should have been required to know that his action, if it took place, as alleged by the plaintiffs, would be unlawful. Yes. Okay. Let's see. Anything else here? To clarify, in the record there are declarations from both Officer Deputy Bean and the sheriff saying that once their role in the prosecution was done, once that enforcement part was done and the DA had the case, that they didn't have any further communications with the U.S. Attorney's Office or Federal law enforcement saying, hey, they filed this motion for this petition to return marijuana. Will you take this? Those communications didn't happen. Well, that's his version of it. I mean, that gets you back to they're asking for discovery to be able to verify whether that's true or not. And, of course, that happens in all kinds of litigation. That's why I get back to the issue of the qualified immunity. If there was not qualified immunity, then you may have to be subjected to some discovery so that ultimately the trier of fact can determine who's telling the truth. Yes. But you never get there if you have qualified immunity. Isn't there an element of good faith in the assertion of qualified immunity by law enforcement officers? I'm not sure that a person can willfully misunderstand and clearly establish the law and be entitled to qualified immunity.  Well, when an officer asserts qualified immunity, I believe we have cases that at least raise the issue of whether the officer was acting in good faith. Now, was this sheriff acting in good faith if he had announced his made well known or his known or his shown or whatever, that he was totally against this Oregon law? And would do whatever he could to thwart its operation? Okay. I'm way past my time here. But his statement that there is no medical use for marijuana, that's a correct statement of law. His opinion that this is being used to abuse or circumvent controlled substances laws, that's his opinion, but I don't know that I certainly wouldn't carry that and attribute then bad faith and some kind of manipulative effort on his part saying, wow, this law is unclear. Let me see if I can get the AUSA to prosecute this because I'm free to retaliate against them that way. See, I'm not sure there's even any act of retaliation. I'm not sure what the retaliatory act is here. You're saying talking to law enforcement to get a federal prosecution of this criminal activity. Anything other than isn't necessary to show that this officer acted in good faith. No. I don't think so. No, I don't think that's an element of the qualified immunity. All right. Thank you. Judge Ferguson, I believe that there is both an objective and subjective component to qualified immunity such that the officer has to both reasonably believe that the law is a certain way and there has to be an objective basis for that. Is there any case law that expressly requires, in quotes, good faith? I've never seen any such case. Have you? I don't think that would be the wording. I think there would be the objective and subjective reasonable belief. The objective, of course, is, you know, you look at the law and you find out whether it's clear. Right. What's the subjective part and on what case do you rely? My memory is that the qualified immunity case law says that the officer must both reasonably believe that the law is a certain way and that the law is not clearly established. Right. But, I mean, isn't the truth of the matter is we're not talking about this officer. We're talking about the reasonable officer and whether a reasonable officer at this time could have been confused about something like that. It doesn't have anything to do with this officer. It has to do with whether the judges and the courts have determined, and looking at the law as it existed at that time, whether that was a reasonable basis. Correct. It has nothing to do with the officer, right? That's correct, Your Honor. And I think that some of the confusion... If you have a situation where an officer has announced his position and it's contrary, say, to law, and he says, well, forget about that. I'm just going to go ahead and do this. Right. I think it's... But that assumes away the problem. Well, yes. I think that some of the confusion is that the defendant has conflated two arguments. The defendant is trying to argue the merits as if you were the finder of fact and saying, we had no retaliatory intent. We were simply confused on the law. The problem is that that is not the point. The point is that the jury would be entitled to find that the officers involved took steps to retaliate because of the filing of the motion to return the marijuana. Whether the law about marijuana is clear or not, that's not the point. With respect, help me out. Let me just say... Okay, go ahead. Before we got the blessing of all these rulings about qualified immunity and absolute immunity, the rule was, say, in a 1983 action, that the jury was instructed that if the officers acted reasonably in good faith, even though there was a violation of the law, that that was a defense. Yes. Yes, and I think... There's always that element of acting reasonably in good faith. Yes. I think if we were here on, say, a charge of marijuana violating the controlled substance... It's up to this system of qualified immunity and all the rest of it, because that was supposed to cut the system short, you know, short shrift, get rid of this case. But all it did was just create more issues and more work, because it wouldn't take a jury long to figure out whether an officer acted reasonably and in good faith. But it takes hours and hours and hours and hours of debate to get into these immunity issues. But nonetheless, the Supreme Court has so declared... As Charles Dickens says, the overarching principle of the English law is to always keep itself in business. We're adding, you know, the gross national product of the United States. I hadn't heard that quote. So lawsuits are supposed to subtract 3% of the gross domestic product every year. Oh, dear. Whatever that... It's being boosted all the time. Lawsuits should subtract 3%. It subtracts from the gross domestic. It subtracts. Subtracts, yeah. Not helpful. I think, you know, some of this is overly convoluted, because if you just get back to the point that this is a retaliation case, you get away from some of the... It's retaliation only if a constitutional right was violated. And it is violated only if there's not qualified immunity. And so that's why... I mean, I get your case. I probably buy much of your case if I get past the qualified immunity. But take, for example, the Emerald Steel case that he talked about that was decided two years later. The state Supreme Court can't really decide what to do about this issue of preemption. Why isn't that an important point in terms of how... If the state Supreme Court can't figure this out, how is the sheriff supposed to know? I think I understand the problem here. We are not saying that my clients have a constitutional right to have their marijuana. That is not... I understand that. That's not the issue. No, the issue is whether there was a violation of your client's constitutional rights to get the marijuana back, right? No. Whether... No. Whether they have a... State law. Whether they have... No. It's actually whether they have a right to petition the government under the First Amendment. Even if they were wrong... Well, that's a constitutional right, isn't it? Right. But even if they were wrong on the fact, on their argument that they should get their marijuana back, even if they were totally wrong, they filed this motion, they're just crazy, the next thing that happens is there's a transfer of the case to federal court so that that motion doesn't get heard. They still have been retaliated against. But if your client's basic position is undermined by the fact that nobody knows the answer to the question, whether or not they are entitled to get it back, then you have a problem, don't you? Well, for one thing, CAMA was decided in 2002, and it clearly established that the city of Portland was required to return the medical marijuana. They presented the very same argument the sheriffs had presented here, that it would violate the Controlled Substances Act. And in this case, the sheriffs simply argued that CAMA was wrongly decided, and that is the law of the land until it's changed. And in the district court, the court said the qualified immunity decision was based entirely on the preemption argument that the court said seeking to prevent violation of federal law that preempts state law by opposing the state law cannot be considered violation of a clearly established constitutional right. Trying to wrap your head around that finding, again, I think overly convolutes things, because the question is not was the right to have the marijuana clearly established, but is the right to file that petition clearly established, to petition your government. Thank you, Your Honors. Well, very, very interesting matter. I guess that's it, huh? All right. Go on.
judges: Goodwin, Pregerson, M Smith, Cjj